SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.** (A-60-24) (090285)

**Argued April 27, 2026 -- Decided July 16, 2026**

**JUSTICE PIERRE-LOUIS, writing for a unanimous Court.**

Here, the Court considers whether a 2023 amendment to New Jersey's False Claims Act (NJFCA) that allows the Attorney General to oppose application of the public disclosure bar to suits brought by private parties applies to a notice of opposition submitted after the amendment's effective date in a preexisting case.

The State of New Jersey entered into agreements with various financial services companies (collectively, defendants) that required defendants to price and market Variable Rate Demand Obligations (VRDOs) by considering the individual characteristics of each bond and the associated market conditions. B. Johan Rosenberg, the sole principal of Edelweiss Fund, LLC (Edelweiss), suspected that defendants were "robo-resetting" the interest rates and began to investigate. In 2015, Edelweiss filed a complaint under seal on behalf of the State of New Jersey, alleging that defendants violated the NJFCA in connection with the resetting of VRDO interest rates. The Attorney General declined to intervene in the case.

Defendants moved to dismiss, raising the NJFCA's public disclosure bar, which prohibits private parties from suing based on publicly disclosed transactions. The trial court granted the motion, holding that the information Edelweiss relied on was publicly available. In March 2021, Edelweiss filed an amended complaint, and defendants again moved to dismiss. This time, the trial court denied the motion, finding that the case now required further discovery, limited to the public disclosure bar. After discovery, both parties filed summary judgment motions.

While those motions were pending, the Legislature enacted amendments to various provisions of the NJFCA, including the "Opposition Amendment," which amended N.J.S.A. 2A:32C-9(c) to permit the Attorney General to oppose dismissal on public disclosure bar grounds without needing to intervene and take over an action as previously required. The Legislature specified that the amendments were to "take effect immediately." In August 2023, the Attorney General filed a notice of opposition in this matter pursuant to the amended statute.

1

In October 2023, the trial court granted summary judgment in favor of Edelweiss and denied defendants' motion, holding that the Opposition Amendment applied and permitted the Attorney General to veto the public disclosure bar. The Appellate Division reversed, holding that the Opposition Amendment did not apply retroactively. The Court granted certification. 260 N.J. 479, 480 (2025).

**HELD:** The 2023 Opposition Amendment was procedural in nature and took effect immediately as directed by the Legislature. The Attorney General effectively opposed application of the public disclosure bar in this matter, which may now proceed.

1. With regard to whether legislative enactments should apply prospectively or retroactively, New Jersey courts have established a distinction between substance and procedure. Enactments that affect substantive rights are presumed to operate prospectively so that individuals have advance notice of the liability rules that will attach to their underlying conduct, with the commonly used phrase "shall take effect immediately" interpreted to oppose retroactive application. On the other hand, "where the course of practice or procedure for the enforcement of a right, or the prosecution of a suit, shall be changed, actions now pending, or hereafter begun shall be conducted as near as may be in accordance with such altered practice or procedure." N.J.S.A. 1:1-14 (emphasis added). The United States Supreme Court clarified in Landgraf v. USI Film Products, 511 U.S. 244 (1994), that remedial and procedural statutes can have retroactive effect not because they are an exception to the presumption against retroactivity, but because they are not "retroactive" in the first place; that is, they do not impair rights a party possessed when the party acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. The Court reviews that case. (pp. 15-19)

2. The NJFCA imposes civil penalties on any person who "[k]nowingly presents . . . a false or fraudulent claim for payment or approval." N.J.S.A. 2A:32C-3(a). Like its federal counterpart, the FCA, the NJFCA allows cases either to be brought directly by the government or to be brought by a private individual -- a qui tam relator -- who sues "in the name of the State of New Jersey." N.J.S.A. 2A:32C-5(a) to (b). A relator can share in the State's recovery if the lawsuit ultimately succeeds. Id. at -7. The Attorney General may choose to intervene in the case and, if not, may seek to do so at a later time, which the court must allow "upon a showing of good cause." Id. at -6(f). The NJFCA's public disclosure bar precludes actions by relators based on publicly disclosed "allegations or transactions." N.J.S.A. 2A:32C-9(c). The bar serves as a barrier to "parasitic lawsuits" -- lawsuits brought by private parties taking advantage of information already in the public domain -- while simultaneously encouraging private persons to root out fraud. (pp. 19-20)

2

3.  Prior to the 2023 amendment, the public disclosure bar -- an affirmative defense -- was unavailable in two situations:  (1) when an action was brought by the Attorney General, and (2) when "the person bringing the action [was] an original source of the information."  N.J.S.A. 2A:32C-9(c) (2022).  In 2023, the New Jersey Legislature amended the NJFCA.  Among other changes and as relevant here, the Opposition Amendment altered the role of the Attorney General with respect to the public disclosure bar, with its provisions to "take effect immediately."  The amended statute now makes the public disclosure bar defense unavailable in three situations: if the action is (1) "opposed by the Attorney General," (2) "brought by the Attorney General," or (3) "the person bringing the action is an original source of the information."  N.J.S.A. 2A:32C-9(c).  (pp. 20-23)

4.  Applying those principles, the Opposition Amendment was a procedural, not substantive, change to the statute and therefore allows the Attorney General to file a notice of opposition any time after the amendment's enactment -- including in the present action -- in keeping with the Legislature's directive that the amendments take effect "immediately."  Allowing the Attorney General the ability to file the notice of opposition pursuant to the amended N.J.S.A. 2A:32C-9(c) is a prospective, not retroactive, application of the Opposition Amendment.  The Court explains why the Appellate Division's holding in State ex rel. Health Choice Group, LLC v. Bayer Corp., 478 N.J. Super. 184 (App. Div. 2024), that the 2023 amendment to the NJFCA's "original source" language did not apply to pending cases, does not control the outcome here:  whereas Health Choice involved an amendment that relates to the substantive elements of the public disclosure bar, the Opposition Amendment was procedural.  The Attorney General always had the ability to prevent application of the public disclosure bar, and the Opposition Amendment altered only the way the Attorney General could exercise the discretion to do so.  The Court rejects the argument that the Opposition Amendment is a substantive change because it deprives defendants of an affirmative defense.  Post-amendment, defendants are still entitled to assert the public disclosure bar as a defense, subject to the Attorney General's opposition, as was true pre-amendment.  Defendants cannot plausibly argue that they reasonably expected to rely on the public disclosure defense when that defense was always subject to being voided by the Attorney General throughout the pendency of the litigation.  (pp. 24-29)

**REVERSED.**

**JUSTICES WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.  CHIEF JUSTICE RABNER and JUSTICE PATTERSON did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-60 September Term 2024

090285

State of New Jersey ex rel.
Edelweiss Fund,
LLC,

Plaintiff-Appellant,

v.

JPMorgan Chase & Co.,
JPMorgan Chase Bank, N.A., J.P.
Morgan Securities LLC, f/k/a
JPMorgan Securities, Inc.,
Citigroup Inc., Citigroup
Global Markets Inc., Citibank,
N.A., Citigroup Financial
Products Inc., Citigroup
Global Markets Holdings Inc.,
Citigroup Global Markets
Limited, Wells Fargo &
Company, Wells Fargo Bank,
N.A., Wells Fargo Securities
LLC, Wachovia Bank, N.A., its
predecessor by merger, Bank of
America Corporation, Bank of
America, N.A., Bank of America
Securities LLC, Merrill Lynch,
Pierce, Fenner & Smith
Incorporated, Bank of
America Capital Corporation,
BofA Merrill Lynch Asset
Holdings, Inc., Bank of America
Merrill Lynch, Morgan
Stanley, Morgan Stanley
Smith Barney LLC, Morgan

1

Stanley & Co. LLC, and Morgan
Stanley Capital Group Inc.,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 27, 2026 | July 16, 2026 |

F. Franklin Amanat argued the cause for appellant
(Motley Rice, Stone & Magnanini, McKool Smith, and
Whistleblower Law Collaborative, attorneys; Robert A.
Magnanini, Julio C. Gomez, Daniel W. Levy, and Erica
Blachman Hitchings a member of the Massachusetts bar,
admitted pro hac vice, on the briefs).

Lawrence S. Lustberg argued the cause for respondents
Bank of America Corporation, Bank of America, N.A.,
Merrill Lynch, Pierce, Fenner & Smith, Inc., BofA
Merrill Lynch Asset Holdings, Inc., and Bank of America
Capital Corporation (FBT Gibbons and Wilmer Cutler
Pickering Hale & Dorr, attorneys; Lawrence S. Lustberg,
and Matthew D. Benedetto a member of the California
bar, admitted pro hac vice, on the joint briefs).

Aguilar Bentley and Sidley Austin, attorneys for
respondents Morgan Stanley, Morgan Stanley Smith
Barney LLC, Morgan Stanley & Co., LLC, and Morgan
Stanley Capital Group Inc. (Anna Aguilar, Lisa D.
Bentley, and David H. Hoffman, Kathleen L. Carlson,
Thomas H. Collier, and Robert N. Hochman, members of
the Illinois bar, admitted pro hac vice, and Joan M.
Loughnane a member of the New York bar, admitted pro
hac vice, on the joint briefs).

Jones Day, attorneys for respondents Wells Fargo &
Company, Wells Fargo Bank, N.A., Wells Fargo

Securities LLC, and Wachovia Bank, N.A., its predecessor by merger (Jennifer L. Del Medico, and Michael P. Conway a member of the Illinois bar, admitted pro hac vice, on the joint briefs).

Greenberg Traurig, attorneys for respondents JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities LLC, f/k/a JPMorgan Securities, Inc. (Eric D. Wong, on the joint briefs).

Pashman Stein Walder Hayden and Paul, Weiss, Rifkind, Wharton & Garrison, attorneys for respondents Citigroup Inc., Citigroup Global Markets Inc., Citibank N.A., Citigroup Financial Products Inc., Citigroup Global Markets Holdings Inc., and Citigroup Global Markets Limited (Brendan M. Walsh, and Susanna M. Buergel and Daniel A. Negless members of the New York bar, admitted pro hac vice, and Lina Dagnew a member of the District of Columbia bar, admitted pro hac vice, on the joint briefs).

Benjamin M. Shultz, Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jennifer Davenport, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, and Benjamin M. Shultz and Sookie Bae-Park, Assistant Attorneys General, of counsel, Lara J. Fogel, Assistant Attorney General, of counsel and on the brief, and Patrick M. Clancey, Jillian Pulverenti, Jedediah Pencinger, Leslie Prentice, and Brian DeVito, Deputy Attorneys General, on the brief).

David R. Kott argued the cause for amici curiae New Jersey Business & Industry Association, New Jersey Chamber of Commerce, and Commerce and Industry Association of New Jersey (McCarter & English, attorneys; David R. Kott, of counsel and on the brief, and Sofia S. Camara, on the brief).

3

Richard Vuernick submitted a brief on behalf of amicus curiae The Anti-Fraud Coalition (Kennedy Vuernick, The Anti-Fraud Coalition, and Phillips & Cohen, attorneys; Richard Vuernick, Jacklyn DeMar a member of the Maryland bar, admitted pro hac vice, and Claire M. Sylvia a member of the California bar, admitted pro hac vice, on the brief).

Thomas J. Scrivo submitted a brief on behalf of amici curiae Chamber of Commerce of the United States of America and American Bankers Association (King & Spalding, attorneys; Thomas J. Scrivo, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

New Jersey's False Claims Act allows for suits to be brought by the Attorney General of New Jersey or by private parties acting as "qui tam relators." Until 2023, however, relators who were not the original source of the information underlying their claims were barred from bringing suit based on publicly disclosed transactions. In other words, defendants could move to dismiss claims brought by private parties by invoking the public disclosure bar unless such claims were brought by the Attorney General or the Attorney General intervened in the litigation. In 2023, the Legislature amended N.J.S.A. 2A:32C-9(c) to allow the Attorney General to oppose application of the public disclosure bar without intervening in the litigation by filing a notice of opposition. Pursuant to the amendment, in cases in which the Attorney

4

General submits a notice of opposition, relators may now pursue actions based on publicly disclosed transactions.

In this matter, we consider whether that change applies to a notice of opposition submitted by the Attorney General after the amendment's effective date in a case filed prior to the amendment's effective date. For the reasons that follow, we find that the amendment was procedural in nature and took effect immediately as directed by the Legislature. We therefore reverse the Appellate Division's judgment and hold that the Attorney General effectively opposed application of the public disclosure bar in this matter, which may now proceed.

## I.

### A.

In April 2009, the State of New Jersey entered into agreements with various financial services companies and their subsidiaries as "remarketing agents" (RMAs). Those companies include JPMorgan Chase & Co., Citigroup Inc., Bank of America Corp., Morgan Stanley, and Wells Fargo & Co. (collectively, defendants). The agreements required defendants to price and market Variable Rate Demand Obligations (VRDOs). VRDOs are variable-rate, tax-exempt bonds that state and local governments issue to finance long-term projects for local communities. VRDOs allow the State to borrow money

5

for long periods while paying lower, short-term interest rates. VRDOs allow holders to sell, or "put"[1] the VRDOs at face value plus interest. VRDOs are an attractive investment vehicle because they are low-risk, high-liquidity, and tax-free. The State hired defendants to price the VRDOs at the lowest possible interest rates.

Under the agreements, defendants were required to price the bonds by considering the individual characteristics of each bond and the associated market conditions. The agreements required defendants to reset rates on a daily or weekly basis. Defendants were additionally paid a fee to provide letter of credit services to guarantee the VRDOs.[2]

B.

Plaintiff Edelweiss Fund, LLC (Edelweiss) is a Delaware corporation comprised of its sole principal, B. Johan Rosenberg, an experienced municipal advisor. Rosenberg claims he identified an unusual pattern in the municipal

---

[1] A "put" is "an option to sell a specified amount of a security (such as a stock) or commodity (such as wheat) at a fixed price at or within a specified time." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/put (last visited June 24, 2026).

[2] VRDOs are typically secured by letters of credit, where commercial banks guarantee payment of the principal and interest on a bond issue to protect investors in the event the RMA is unable to find new investors for the bonds. Defendants JPMorgan Chase, Citigroup, Wells Fargo, and Bank of America served as both the RMA and as a letter of credit provider for a substantial portion of their New Jersey VRDOs.

bond market. Rosenberg observed that two dissimilar VRDOs marketed by defendants consistently shared identical rates and rate changes over an extended period of time.

Rosenberg suspected that defendants were "robo-resetting" VRDO interest rates, i.e., that defendants set rates to automatically reset en masse at artificially high levels. Rosenberg sought to confirm his suspicion, and he subsequently developed proprietary software to assess and compare VRDO rates. Rosenberg obtained relevant data by subscribing to the short-term obligation subscription service provided by the Municipal Securities Rulemaking Board (MSRB) at a cost of about $10,000 annually, and through the free Electronic Municipal Market Access (EMMA) portal, also managed by the MSRB. The same VRDO data was also available to subscribers of Bloomberg Municipal Securities Master Database or a Bloomberg Terminal at a cost of approximately $23,000 annually.

Rosenberg continued his personal investigation into the alleged fraud, including by conducting interviews with industry participants. This led Rosenberg to allege that defendants colluded with each other to establish a secret "index" to coordinate rate-setting activities. Rosenberg believed that, by setting artificially high interest rates for the VRDOs, defendants effectively ensured that the bonds would be retained by investors, and therefore

7

defendants would never be required to purchase the bonds as letter of credit providers.

C.

In 2015, Edelweiss filed a complaint under seal on behalf of the State of New Jersey, alleging that defendants violated the New Jersey False Claims Act (NJFCA), N.J.S.A. 2A:32C-1 et seq., in connection with the resetting of VRDO interest rates.[3]  In its complaint, Edelweiss alleged that defendants:  (1) intentionally failed to reset rates at the lowest rate possible, opting instead to reset rates en masse through robo-resetting; (2) failed to ascertain the lowest possible rate that could be charged; and (3) charged the State fees for remarketing and letter of credit services that were never provided.

While the case was under seal, Edelweiss amended the complaint twice: on January 25, 2017 and March 28, 2019.  On July 17, 2019, the Attorney General declined to intervene in the case.  After the trial court unsealed the

---

[3]  Rosenberg, individually or through Edelweiss, filed similar qui tam suits in other states under their respective False Claims Acts.  In Massachusetts, the case reached the Supreme Judicial Court.  Rosenberg v. JPMorgan Chase & Co., 169 N.E.3d 445 (Mass. 2021).  There, the court held that the public disclosure bar applied.  Id. at 456-66.  California's intermediate appellate court reached a different result, holding that Edelweiss's claims were not based on information found in "news media."  State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co., 307 Cal. Rptr. 3d 750, 778 (Ct. App. 2023).  An Illinois circuit court reached a similar result in an unpublished decision. Proceedings are currently pending in New York as well.

case on July 26, 2019, Edelweiss filed a third amended complaint in early 2020. Defendants moved to dismiss, raising the NJFCA's public disclosure bar. The trial court held that the underlying transactions -- the VRDO interest rate reset data -- were publicly available through EMMA, Bloomberg, and MSRB SHORT, which the court considered to be "news media" under the NJFCA. It also held that Edelweiss was not an original source of the information because it did not allege direct and independent knowledge of the alleged fraud. The trial court dismissed the complaint without prejudice on the basis of the public disclosure bar.

In March 2021, Edelweiss filed a fourth amended complaint. Defendants filed another motion to dismiss. This time, the trial court denied the motion and found that resolution of the case now required further discovery, limited to the public disclosure bar. After discovery, both parties filed summary judgment motions and requested that the trial court resolve, in their favor, the question of whether the public disclosure bar applied.

While cross-motions for summary judgment were pending, the New Jersey Legislature enacted amendments to various provisions of the NJFCA on June 30, 2023, including the amendment at issue to N.J.S.A. 2A:32C-9(c) (Opposition Amendment), which permitted the Attorney General to oppose dismissal on public disclosure bar grounds without needing to intervene and

9

take over a relator-initiated action as previously required.  The Legislature specified that the amendments were to "take effect immediately."  In August 2023, the Attorney General filed a notice of opposition in this matter pursuant to the amended statute.

On October 24, 2023, the trial court granted summary judgment in favor of Edelweiss and denied defendants' motion, holding that the Opposition Amendment applied to permit the Attorney General to veto the public disclosure bar, and finding that the Attorney General's notice of opposition was effective.  Alternatively, the court held that, assuming the Opposition Amendment did not apply, disputed issues of material fact concerning the public disclosure bar and "original source" exception existed, precluding summary judgment for either side.

## D.

Defendants filed a motion for leave to appeal the trial court's interlocutory order.  The Appellate Division granted the motion and reversed the trial court's decision.  The appellate court further reversed the trial court's alternative holding and directed the entry of summary judgment for defendants.

The Appellate Division held that the Opposition Amendment did not apply retroactively, interpreting the phrase "shall take effect immediately" as

10

signifying an exclusively prospective application. The court concluded that the Opposition Amendment was not curative; that there was no evidence of legislative intent to apply it retroactively; and that the parties did not expect retroactive application. The appellate court reasoned that the elimination of the requirement that the Attorney General must intervene for the public disclosure bar to apply was a significant change that the Legislature could have explicitly made retroactive if desired. The Appellate Division rejected Edelweiss's arguments for pipeline retroactivity, finding that the anti-retroactivity rule required application of the pre-amendment statute to the entire continuous course of conduct involved in the litigation, including fraud alleged to have occurred after the amendment's effective date.

The Appellate Division then turned to the trial court's alternate ruling denying summary judgment to either party and the application of the public disclosure bar. The court determined that the relevant VRDO rate data was publicly available. The court further found that Edelweiss was not an original source, as its knowledge was derived from publicly available data and not obtained through direct and independent means. The Appellate Division declined to credit Edelweiss's arguments that cost, technical barriers, and licensing restrictions rendered the information non-public under the NJFCA.

11

E.

We granted Edelweiss's petition for certification. 260 N.J. 479, 480 (2025). We also granted leave to appear as friends of the court to: (1) the Attorney General; (2) the Anti-Fraud Coalition (TAFC); (3) the New Jersey Business & Industry Association, New Jersey Chamber of Commerce, and Commerce and Industry Association of New Jersey (collectively, State Business Organizations); and (4) the Chamber of Commerce of the United States of America and the American Bankers Association (collectively, National Business Organizations).

II.

Edelweiss argues that the Legislature intended that the Opposition Amendment's provisions "shall take effect immediately," and that the State should be able to "use the streamlined procedure that the Legislature intended" and exercise its veto power in pending cases like this one. Edelweiss further asserts that a retroactivity analysis does not apply here.

The Attorney General echoes Edelweiss's arguments, asserting that the Opposition Amendment applies to "any such filing the Attorney General makes in an NJFCA case after the passage of the statute." Further, the Attorney General argues that courts should afford substantial deference to the Attorney General's interpretation of the NJFCA due to its statutory role in

12

enforcing the statute. The Attorney General emphasizes that the public disclosure bar serves to protect the State from parasitic lawsuits, and the State, in filing the notice of opposition, told the court that this lawsuit is not "parasitic."

TAFC does not address whether the Opposition Amendment applies in this case, but instead argues that certain sources of information available to members of the public do not qualify as "news media."

Defendants argue that the Appellate Division correctly held that the Opposition Amendment does not apply retroactively and that its judgment should be affirmed. Defendants assert that legislation is presumed to apply prospectively and that the Legislature must clearly express its intent for a statute to apply retroactively, which it did not do here. Defendants contend that the legal effect of the Opposition Amendment deprives them of a dispositive affirmative defense, which they argue "fundamentally changes the legal consequences of [] [d]efendants' alleged conduct," thereby warranting prospective-only application. Defendants argue that, because the Appellate Division held in State ex rel. Health Choice Group, LLC v. Bayer Corp., 478 N.J. Super. 184, 198-99 (App. Div. 2024), that the 2023 amendment to the NJFCA's "original source" language did not apply to pending cases, the same should apply to the Opposition Amendment. Defendants assert that, under the

13

anti-retroactivity rule, courts must apply the pre-amendment statute to the entire course of conduct, including allegedly fraudulent claims submitted after the Opposition Amendment's effective date in June 2023.

Amici National Business Organizations and State Business Organizations agree with defendants that the Appellate Division's opinion should be affirmed but focus their arguments on whether Edelweiss's complaint was based on publicly disclosed information.

## III.

## A.

The determination of whether a legislative "amendment should be applied retroactively is a purely legal question of statutory interpretation" that we review de novo. Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016).

This Court's role in interpreting a statute "is to determine and effectuate the Legislature's intent." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009). To determine that intent, "we look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." Ibid. (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008)). "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with

14

related provisions so as to give sense to the legislation as a whole."

DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted).

B.

With regard to whether legislative enactments should apply prospectively or retroactively, our courts have established a distinction between substance and procedure: "statutes relating to substantive rights are construed to operate prospectively," while "statutes relating to procedure are applicable to pending proceedings where vested rights would not be disturbed." In re Grossman, 127 N.J. Super. 13, 35 (App. Div. 1974); see also Feuchtbaum v. Constantini, 59 N.J. 167, 172 (1971); Morin v. Becker, 6 N.J. 457, 470-71 (1951). Generally, a rule or statute that is procedural in nature is one that regulates the conduct of litigation, whereas one that is substantive in nature regulates the pre-litigation conduct of the parties. See Maia v. IEW Constr. Grp., 257 N.J. 330, 342-43 (2024).

The presumption "that provisions added by . . . amendment affecting substantive rights are intended to operate prospectively," Strasenburgh v. Straubmuller, 146 N.J. 527, 543 (1996) (emphasis added) (quoting Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 385 (App. Div. 1992), aff'd,131 N.J. 400 (1993)), "ensures individuals have advance notice of the substantive liability rules that will attach to their underlying conduct," see Lombardo v.

15

Revlon, Inc., 328 N.J. Super. 484, 489 (App. Div. 2000) (linking the rule to the difficulties that ensue when people are "expected to obey laws that have not yet been enacted" (quoting Street v. Universal Mar., 300 N.J. Super. 578, 580 (App. Div. 1997))). And the commonly used phrase "shall take effect immediately" has been interpreted to "bespeak an intent contrary to, and not supportive of, retroactive application." Pisack v. B & C Towing, Inc., 240 N.J. 360, 371 (2020) (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 48 (2008)); accord State v. Rosado, 475 N.J. Super. 266, 276 (App. Div. 2023) ("Our Supreme Court has consistently held that an amendment that is to take effect immediately is to be applied only prospectively.").

On the other hand, "[o]ur courts have consistently held that where a statute deals with procedure only, it applies to all actions and proceedings -- those which have accrued or are pending, as well as those yet to be brought." Hoek v. Bd. of Educ. of Asbury Park, 75 N.J. Super. 182, 191 (App. Div. 1962); see Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 73 (1978) ("[A]mendments to a statute are given prospective application only unless the changes are merely procedural or the Legislature specifically indicates otherwise."). Although a new procedural rule will not affect or invalidate steps already accomplished in the course of pending litigation, it will generally govern the steps yet to come in that case. See Sayers v. Lichtman, 117 N.J.L.

16

5, 7 (Sup. Ct. 1936) ("It seems to us that the legal test as to operation to an existing litigation of any statute affecting procedure, and passed during the pendency of such litigation, is whether it relates to what has already transpired in such litigation, or to what has yet to transpire.  In the former case it has no application, barring, of course, an express provision for that purpose.  In the latter case it applies.").

And our Legislature has codified as much, specifying that "where the course of practice or procedure for the enforcement of a right, or the prosecution of a suit, shall be changed, actions now pending, or hereafter begun shall be conducted as near as may be in accordance with such altered practice or procedure."  N.J.S.A. 1:1-14.

The United States "Supreme Court has clarified that remedial and procedural statutes can have retroactive effect not because they are an exception to the presumption against retroactivity, but because they are not 'retroactive' in the first place"; that is, "[t]hey do not impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  2 Sutherland Statutory Construction § 41:3 (8th ed. 2025) (referring to Landgraf v. USI Film Prods., 511 U.S. 244 (1994)).

In Landgraf, the Supreme Court explained the distinction between substantive and procedural statutory amendments. 511 U.S. at 275-79. The Court considered several different provisions of the Civil Rights Act of 1991, which amended Title VII of the Civil Rights Act of 1964, and determined whether those provisions applied to cases pending when the amendments went into effect. Id. at 247. The Court held that a statute does not "operate 'retroactively' merely because it is applied in a case arising from conduct antedating the statute's enactment," and courts must look to whether the "new provision attaches new legal consequences to events completed before its enactment." Id. at 269-70. The Court further determined that "application of new statutes passed after the events in suit is unquestionably proper" in "many situations," including statutes that result in "[c]hanges in procedural rules" because "rules of procedure regulate secondary rather than primary conduct." Id. at 273-75.

The Court also instructed that in assessing the applicability of amendments that "take effect upon enactment" to pending matters, courts "should evaluate each provision of the Act" because "there is no special reason to think that all the diverse provisions of the Act must be treated uniformly for such purposes." Id. at 280 (emphasis added). Indeed, the Court held that the provision that provided for a new right to a jury trial was a procedural change

18

that would "presumably apply to cases tried after [the statute's effective date], regardless of when the underlying conduct occurred." Id. at 280-81. In contrast, the Court observed that another provision was "clearly on the other side of the line," in authorizing punitive damages for pre-enactment conduct, which the Court determined "would raise a serious constitutional question." Id. at 281.

C.

The NJFCA was passed in 2007 and enacted in January 2008. L. 2007, c. 265; State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 367 (App. Div. 2011). The Act imposes civil penalties on any person who "[k]nowingly presents . . . a false or fraudulent claim for payment or approval." N.J.S.A. 2A:32C-3(a). The NJFCA "is intended to protect the government, and ultimately taxpayers, from paying false claims." Health Choice, 478 N.J. Super. at 195. The statute's legislative history indicates that the Legislature modeled the NJFCA after the federal False Claims Act (FCA), 31 U.S.C. §§ 3729 to 3733. See Hayling, 422 N.J. Super. at 372 (quoting NJFCA co-sponsor Assemblyman Herb Conaway, Jr., who described the NJFCA "as New Jersey's whistle blower statute which tracks the federal law").

Like its federal counterpart, the NJFCA allows cases either to be brought directly by the government or to be brought by a private individual -- a qui tam

19

relator -- who sues "in the name of the State of New Jersey." N.J.S.A. 2A:32C-5(a) to (b). A relator can share in the State's recovery if the lawsuit ultimately succeeds. Id. at -7. If the relator pursues the action alone, the Attorney General may choose to receive the parties' filings so that the State can monitor the proceedings. Id. at -6(f). "The decision of the Attorney General on whether to proceed with an action shall be deemed final and shall not be subject to review by any court or agency." Ibid. The Attorney General can seek to intervene at a later time, which the court must allow "upon a showing of good cause." Ibid. The NJFCA expressly states that it is to be "liberally construed to effectuate its remedial and deterrent purposes." Id. at -17.

The NJFCA precludes actions by private persons based on "allegations or transactions" that have previously been publicly disclosed. N.J.S.A. 2A:32C-9(c). If a defendant successfully invokes the public disclosure bar as an affirmative defense, "[t]he court shall dismiss an action or claim under [the NJFCA]." Ibid. Prior to 2023, the public disclosure bar defense was unavailable in two situations: (1) when an action was brought by the Attorney General, and (2) when "the person bringing the action [was] an original source of the information." N.J.S.A. 2A:32C-9(c) (2022). The defense serves as a barrier to "parasitic lawsuits" -- lawsuits brought by private parties taking

20

advantage of information already in the public domain -- while simultaneously "encouraging private persons to root out fraud."  Brennan ex rel. State v. Lonegan, 454 N.J. Super. 613, 620 (App. Div. 2018) (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295 (2010)).

In 2023, the New Jersey Legislature amended the NJFCA.  L. 2023, c. 73.  Prior to the passage of the amendments, the Inspector General for the U.S. Department of Health and Human Services determined that the NJFCA was not "at least as effective" as the FCA in facilitating recoveries in Medicaid fraud cases.  A. Budget Comm. Statement to A. 5584 1 (June 27, 2023).  This finding threatened the State's capacity to reclaim specific funds under federal law, prompting the State to enact the 2023 amendments to resolve these issues. See id. at 1, 3.  Following the amendments, the Inspector General found that the NJFCA was at least as effective as federal law in combating Medicaid fraud.  Letter from Christi A. Grimm, Inspector Gen., U.S. Dep't of Health & Hum. Servs., to Matthew Platkin, N.J. Att'y Gen. (Sept. 7, 2023).  Among other changes and as relevant here, the Opposition Amendment altered the role of the Attorney General with respect to the public disclosure bar, with its provisions to "take effect immediately."  L. 2023, c. 73, §§ 6, 11.

21

The original language of the public disclosure bar stated that "[n]o action brought under this act shall be based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General, or unless the person bringing the action is an original source of the information."  N.J.S.A. 2A:32C-9(c) (2008).

In contrast, the amended language provides that

> [t]he court shall dismiss an action or claim under this act, [(1)] <u>unless opposed by the Attorney General</u>, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . , [(2)] unless the action is brought by the Attorney General, or [(3)] unless the person bringing the action is an original source of the information.
>
> [N.J.S.A. 2A:32C-9(c) (emphasis added).]

Thus, the amended statute preserves the two exceptions to the application of the public disclosure bar and further permits the Attorney General to oppose application of the bar without intervening or otherwise being involved in the case.

The New Jersey Legislature did not expressly state the intent of the Opposition Amendment's changes to the public disclosure bar.  However, federal courts have interpreted nearly identical language found in the FCA's 2010 amendment to provide the U.S. Attorney General with the power to effectively "veto" application of the public disclosure bar.  <u>See</u> <u>United States</u>

22

ex rel. Shea v. Cellco P'ship, 748 F.3d 338, 350 (D.C. Cir. 2014) (Srinivasan, J., concurring in part and dissenting in part) ("The public-disclosure bar now allows the government to veto any dismissal notwithstanding its notice of the fraud."); see also United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 917 (4th Cir. 2013); United States v. Coloplast Corp., 327 F. Supp. 3d 358, 364 (D. Mass. 2018).

### D.

In 2024, the Appellate Division considered whether a change that the 2023 amendments made to a different provision of N.J.S.A. 2A:32C-9(c) -- the "original source" provision -- should be applied retroactively. Health Choice, 478 N.J. Super. at 196. That amendment modified the definition of "original source" to track the federal definition, id. at 196, which the Third Circuit recognized as an expansion of the term's reach and an indication of "Congress's intent to lower the bar for relators," U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 299 (3d Cir. 2016).

The Appellate Division in Health Choice held that the amended provision was to be applied only prospectively, reasoning that "the Legislature stated that the amendments 'shall take effect immediately.'" 478 N.J. Super. at 198-99 (citing Rosado, 475 N.J. Super. at 276; Pisack, 240 N.J. at 371). The court applied the pre-amendment "original source" definition as it appeared in

23

the NJFCA in 2019, the year plaintiffs filed their qui tam actions. Id. at 192, 200. The court then affirmed the trial court's dismissal of plaintiffs' complaints, finding that "plaintiffs did not have direct and independent knowledge of the alleged fraud," which the pre-amendment statute required. Id. at 201-02.

## IV.

Applying those principles, we hold that the Opposition Amendment was a procedural, not substantive, change to the statute and therefore applies to allow the Attorney General to file a notice of opposition any time after the amendment's enactment -- June 30, 2023 -- including in the present action.

The Opposition Amendment to N.J.S.A. 2A:32C-9(c) altered the litigation procedure in qui tam suits related to the Attorney General's involvement in such matters. That provision had previously required the Attorney General to intervene in a case in order to prevent application of the public disclosure bar and dismissal of the case on that basis. The Opposition Amendment now allows the Attorney General to simply oppose the public disclosure bar, a far less onerous way for the Attorney General to allow the matter to proceed than intervention. The NJFCA, specifically N.J.S.A. 2A:32C-6(f), pre-amendment, always allowed the Attorney General to intervene and prevent dismissal on public disclosure bar grounds at any time

24

prior to dismissal, provided that if the Attorney General initially declined to intervene, the trial court could permit later intervention upon a showing of good cause. Consequently, the relevant action affected by the Opposition Amendment was the Attorney General's ability to preclude application of the public disclosure bar by simply filing a notice of opposition, instead of intervening.

The Opposition Amendment had no impact on defendants' alleged underlying conduct and affected only a procedural aspect of the NJFCA -- the manner in which the Attorney General could prevent application of the public disclosure bar. The Opposition Amendment did not alter liability for past conduct, nor did it change any defined terms of the statute or requirements for filing a complaint. It did not alter any vested rights of the parties or the substance or scope of the NJFCA. Applying the amendment to the procedural action at issue after the amendment took effect adheres to the Legislature's directive that the amendments take effect "immediately." Allowing the Attorney General the ability to file the notice of opposition pursuant to the amended N.J.S.A. 2A:32C-9(c) is a prospective, not retroactive, application of the Opposition Amendment.

Here, defendants argue that, given the Appellate Division's decision in Health Choice that the pre-amendment definition of "original source" applied

25

to cases filed before the amendments to the NJFCA, the Opposition Amendment also should not apply to cases filed before its effective date. But as the Supreme Court held in Landgraf, in assessing multiple amendments to a statute, courts must examine each provision separately and should not assume that different provisions were intended to have the same applicability to pending cases. 511 U.S. at 280.

The NJFCA's definition of "original source" was amended in 2023 to track the amended federal definition of the phrase, which the Third Circuit recognized as an expansion of the term's reach. Health Choice, 478 N.J. Super. at 196; Moore & Co., 812 F.3d at 299. The change to the definition of original source, one of the routes for a qui tam matter to proceed without the Attorney General's intervention pre-amendment, altered the substance of what it means to be an original source.

Under the pre-amendment definition, a qui tam plaintiff was required to be a "direct" source of the information comprising the allegations of fraud. Health Choice, 478 N.J. Super. at 196 (quoting N.J.S.A. 2A:32C-9(c) (2008)). But the post-amendment version allows a suit to proceed if the qui tam plaintiff has knowledge that "materially adds to the publicly disclosed allegations or transactions." Id. at 197 (emphasis added) (quoting N.J.S.A. 2A:32C-9(c)). This change expanded the universe of plaintiffs who are

26

eligible to file a claim under the NJFCA.  Instead of requiring relators to possess direct knowledge of fraudulent activity, the post-2023 NJFCA is now more permissive of relators who file a claim with second-hand information. See id. at 196-97, 199.  That change, in effect, lowered the evidentiary standard for relators in qui tam suits, which relates to the substantive elements of the public disclosure bar.  Compare United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1160 (3d Cir. 1991) (holding under the pre-2010 amendments to the FCA that a relator lacked direct knowledge because it had learned of the fraud "through two intermediaries"), with Moore & Co., 812 F.3d at 299 ("Significantly, a relator no longer must possess 'direct . . . knowledge' of the fraud to qualify as an original source.").

The same cannot be said for the procedural amendment to N.J.S.A. 2A:32C-9(c).  The Opposition Amendment did not change any defined terms, substantive elements, or attach any new rights or legal consequences to pre-amendment conduct.  Just as Landgraf recognized that a new right to a jury trial provided by the Civil Rights Act of 1991 was a procedural change that would ordinarily apply to all cases tried after its enactment, regardless of when the underlying conduct occurred, we now recognize that applying the procedural Opposition Amendment in N.J.S.A. 2A:32C-9(c) to this case is not

27

a retroactive application and does not raise concerns of retroactivity. The amendment to that specific provision, irrespective of any other amendments to the NJFCA, simply changed the manner in which the Attorney General could prevent dismissal of a qui tam case on public disclosure bar grounds, without affecting the substance of the claim or the conduct alleged. The Attorney General always had the ability to prevent application of the public disclosure bar, and the Opposition Amendment altered only the way the Attorney General could exercise the discretion to do so.

Defendants further argue that the Opposition Amendment is a substantive change because it deprives them of an affirmative defense. We disagree. Post-amendment, defendants are still entitled to assert the public disclosure bar as a defense, subject to the Attorney General's opposition, as was true pre-amendment. In a case in which the Attorney General does nothing at all -- i.e., declines to intervene or file a notice of opposition -- defendants may even be successful in dismissing the case on public disclosure bar grounds. But defendants cannot plausibly argue that, during the time of the alleged conduct or while the matter was pending, they reasonably expected to rely on the public disclosure defense when that defense was always subject to being voided by the Attorney General throughout the pendency of the litigation. Therefore, defendants could never have had an expectation that the

28

public disclosure bar would result in dismissal of a case unless and until the case was actually dismissed.

V.

The Appellate Division's judgment is reversed. Because we hold that the Attorney General's notice of opposition was proper here pursuant to the Opposition Amendment, we need not reach the substantive question of whether the public disclosure bar applies to warrant dismissal of Edelweiss's lawsuit. The Attorney General's notice of opposition pursuant to N.J.S.A. 2A:32C-9(c) effectively blocked dismissal of this matter on public disclosure bar grounds.

JUSTICES WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion. CHIEF JUSTICE RABNER and JUSTICE PATTERSON did not participate.

29